Our next and final oral argument for the day is Velazquez v. Superintendent Fayette SCI at OWL. Good morning, Your Honors. My name is Rosemary Alge and I represent Anthony Velazquez, the appellant, and I would like to reserve two minutes for rebuttal. With the court's permission, I want to jump right into what is the most complicated or what I believe is the most complicated question presented by this case. And that is, how does the court assess prejudice stemming from the ineffectiveness in the guilty but mentally ill plea? That may be the most complicated issue, but there are also some very curious questions for which there may or may not be answers that are actually procedural in nature here. I just characterized the previous case as a very interesting case. This is a very odd one in my experience. I'm an old Pennsylvania trial judge. Experience, not old. Old, old, old, and an old Pennsylvania district attorney. Had some experience, only a little with the GBMI, mainly because it was fairly new when I was still around. I assume we're correct, and I'll certainly be asking the other side this, that what we had was a plea entered in April of 2010, right? Yes, Your Honor. And it has to be characterized at that stage, and I think was on the record, as a guilty plea. Yes, Your Honor. Right? And then only two months later we have sentencing occur. Yes, Your Honor. Right? And a record which demonstrates nothing in the nature of the kind of process that the state statute requires for GBMIs occurring in that interim. Is that right? That's correct, Your Honor. So with that being the procedural posture of the matter, notwithstanding references by participants in the sentencing that there had been a GBMI here. Yes, Your Honor. There's nothing in the record to reflect that there actually was a GBMI entered with a process that is required by the statute, emphasized as a requirement by the Pennsylvania Supreme Court in San Diego. That's absolutely correct, Your Honor. All right. And defense counsel said nothing at the time of the sentencing. No, and did not object to the idea that there was a GBMI entered or asked for the process that was required in order to enter a GBMI. Deficient performance? Yes, Your Honor. All right. Then jump to your prejudice. Can I just ask what your argument is here? Sorry. You're never going to get to it. I just want to be clear about what your argument is here. Because I think there was a little bit of a change from your opening brief to your reply brief. Are you arguing that there was not ever a GBMI plea that was entered into? Or are you more concerned about the process? It's both. But the reason the focus is only on the process is because that's the benefit that was bargained for. You know, Mr. Velasquez wasn't looking for a check mark on a box. It's also what the Pennsylvania Supreme Court says is required, not only for the benefit of the defendant, but also for the benefit of the public. Yes, Your Honor. There's a policy implication with regard to the hearing that didn't happen. And so I apologize if I seem to be focused on labeling, but it isn't about the labeling of the GBMI. It's about the significance of the process with regard to the GBMI. In fact, other than several people on several occasions perhaps adverting to a GBMI, there was no labeling as GBMI. As I look at the commitment papers even, when Mr. Velasquez was sent to Camp Hill, the document has a series of boxes that can be checked. One can be checked depending upon what the disposition was and how it was. One box says GBMI. It wasn't checked. Correct, Your Honor. He was sent to Camp Hill, which I assume is still a diagnostic and classification center, and was sent there without any reference to GBMI. With no paperwork showing that he was GBMI. So back to the prejudice. Where's the prejudice? I mean, what's the difference here between his being incarcerated pursuant to a straight guilty plea and what happened or could happen pursuant to a GBMI disposition? And I don't believe that the prejudice question is about his incarceration or how he's incarcerated. The question is he gave up his trial rights and agreed to this GBMI. And in exchange for those rights that he gave up, he was guaranteed this process, which Your Honor has recognized the Supreme Court has said is mandatory and non-waivable. And that process included evaluations and reports with regard to his mental health, a hearing before he pled about his mental health, and findings related to his mental health at the time of the offense. Now, there was a report attached to the PSI, wasn't there, that addressed his mental condition? Yes, but that was at the time of sentencing. Right, and it was part of the pre-sentence process. It had nothing to do, as far as we can tell from the record, with any kind of GBMI requirements. No, and it didn't address the finding or the evaluation that was supposed to take place, which was his mental health at the time of the offense. Because that's supposed to inform the court's finding with regard to guilt on his guilty but mentally ill plea. And then that will then, as the court know, bleed into his sentencing and be considered with regard to his sentencing too. None of that process ever happened. And at the time that he was given that GBMI, he should have been given that GBMI process. Had the court not found him guilty but mentally ill, he had the right under the statute to withdraw that plea and pursue his rights, his trial rights, or potentially a standard or some other plea with the Commonwealth. So is that effectively what you're looking to here? I mean, are you asking us to grant the writ, send this back, and as a result, afford Mr. Velasquez the opportunity to choose between withdrawing his plea or staying with his plea? Either to go through that process the way it was supposed to happen, to withdraw his plea, and to go through jury trial, or potentially pursue other plea options with the Commonwealth. Yes, that's the process that he was denied at the time. And that is why the court's focus shouldn't be on his sentence or what his sentence was or what the checkmark on the box is. The court's focus is on the denial of those rights that Mr. Velasquez gave up in exchange for that process that he never got. So if a question arose as to our habeas jurisdiction in this circumstance, and that habeas jurisdiction was described as being based on seeking mental health treatment, you would say that's a mischaracterization of what we should be focused on, and it really should be the fact of conviction. Yes, absolutely, Your Honor. This is not a conditions of confinement case. This is a case that is brought because there was a defect in the conviction itself. Is that what you're saying? Absolutely, yes. You don't even get to the sentencing in this case, because there was never a... We don't even get to the ag assault issue you've raised, do we, if we send it back? Absolutely. It would invalidate the entire guilty plea, and Mr. Velasquez would start all over and get to avail himself of the processes that he was denied at the time that he originally tried to plead. And that's why the focus should be on the denial of those processes. And that's why, you know, that there is shadings of Hill in this. It is somewhat different than Hill, but it is an issue that's focused on process and not outcome. Let me ask you this question. There is, in the various iterations of Mr. Velasquez's pro se briefs, statements in the following that the trial court accepted his GBMI plea. Now, the question is, does that factual averment change the tenor of his GBMI claim from one that would be characterized, as I think you do here, as a 13... I'm sorry, a 314B to a 9727? No, I don't believe so, Your Honor, because, first of all, you're dealing with a pro se petitioner who, you know, might not be using the proper phrasing for what was going on here. And when he says that, you know, the court, that he tried to plead or he pled and the court accepted the plea, that's the way he saw that outcome happening. But as, you know, Judge Smith has recognized or offered, that plea never happened at the time it was supposed to happen, and then at some point, everybody assumed that the plea had happened. But Mr. Velasquez has been pretty clear in his filings from the very first PCRA up until, you know, his filings on this court, to this court, and consistently said that, you know, I wanted to plead guilty but mentally ill. I understood, under Pennsylvania law, I got this hearing about my mental health at the time of the offense before I would plead guilty but mentally ill. I never got that hearing. The counsel had no strategic basis for not ensuring that I get that hearing and that the plea was defective. And so even though he has said at times in his pleadings or in his briefing that he pled guilty but mentally ill or that the court accepted the guilty but mentally ill plea because the court was going to or was going to do it later, that never actually occurred. And he's been clear that that has not occurred and that his plea is defective as a result. But because of that consistency, we don't have an exhaustion issue. I don't believe so, no, Your Honor. And that is, if you look into the MOLs, I mean, in some of his factual environments, he seems to be focusing on the mental health hearing at the sentencing sometimes. But when you look into his MOL, he's very clear. And he outlines Pennsylvania law. He quoted it verbatim for the court in his MOL, explaining that it was a requirement and that the court did not have authority to take the plea without that hearing. I believe he also even cited Davis, which is also very clear that the court doesn't have authority and has consistently done so. And the problem is that none of his attorneys and none of the state courts have actually dug into his pro se filings that, though not voluminous, might have at times mischaracterized some of what he was actually arguing. Does the clerk have any further questions? I have no further questions. I'll reserve for rebuttal. Thank you. Mr. Anderson. Good morning, Your Honors. May it please the court. Travis Anderson on behalf of the appellees in the Commonwealth of Pennsylvania. The argument that was just presented by appellant's counsel, that the failure of the proper process being followed prejudiced Mr. Velasquez in so far as it denied him the opportunity to present to the court additional information that may have impacted the court's disposition of the case and or allowed him to withdraw the plea, is materially different from any claim that Mr. Velasquez raised at any point in the state court. It's different from the claim that he raised in the district court. And in some ways, it's different from the claim that he raised in his initial. He repeatedly said that his GBMI was defective, didn't he? He did say that it was defective, but he did not. He identified the only prejudice that he pointed out and the only prejudice then that any court addressed was the fact that the lack of this hearing may have caused him to lose out on certain programming and treatment that he maybe otherwise would have gotten within the state prison system. I mean, isn't it a fairly accurate characterization of his pro se filings that he was always alluding to the 1314B deficiency? I mean, that seems to be pretty clear. It's also pretty clear that everybody seemed to have missed it other than he. They characterized it as a matter of whether the state voluntarily allowed it to go forward and just whether the plea had happened. I mean, it was clear that he was pretty consistent on the 314B. But we never had an opportunity to build a record with respect to any of these things in any state court proceeding because he didn't present. What record do you need? I mean, when you look at the record before the trial court, Chief Judge alluded to it before. The judge says, OK, this is going to be a GBMI. We're going to have to have a hearing. Everyone says, OK, let's go for a hearing. And the next thing you know, there is a plea and there's no hearing on the GBMI and there's no reference to the GBMI at the actual sentencing. So isn't that a clear sign that there's a 314B violation? Let's not forget this is a Strickland case, too. Correct. Right. I fully absolutely the procedures that were outlined in 314 were not followed. But the fact of the matter is, whether you're pleading, whenever somebody pleads guilty but mentally ill, it does not entitle you to a reduction in sentence. It doesn't obligate the Department of Corrections to provide any additional programming. The only real difference that comes into play, the only entitlement difference would be under, I believe, 9727. Instead of incarcerated in an SCI, he could be referred for mental health treatment to an institution, either by the court or by the county mental health agency, right? Well, if the person... Doesn't the statute say just that? Yes, if the person is in need of treatment under the mental health procedures. Exactly, which we don't know because those procedures were never followed for purposes of a GBMI here. You seem to be minimizing the difference between those two possibilities. But that's also the idea that he should be receiving treatment in a mental health facility, that he should be civilly committed. It's not a claim that he ever raised. It's not an assertion that he makes. He doesn't say, if I had had this hearing, I would be treated in some kind of mental health facility. Isn't that what flows naturally from the whole process? I mean, that's a possibility. It's what the statute says. And beyond that, when we look at what Davis says, we see the importance of that process being pursued. I mean, what more does he have to say? This was defective. And certainly the record supports that, and you've conceded that it was defective, although you've not used that word. So the logical import of that, what occurs as a result of that is obvious, isn't it? He doesn't get the benefit of the court making determinations concerning his mental condition, and then making sentencing determinations which have the potential of directing him to one place or another. And one of those places is certainly going to provide him with much more in-depth and significant mental health treatment than he would receive if he were sent to an FCI. Do you disagree with any of that? Well, as a general matter, looking at a guilty but mentally ill plea in the abstract or in a vacuum, I do completely agree with everything that Your Honor just said. My principal complaint with respect to this argument is that it's one that was waived, it was unexhausted. That particular idea that he may be subject to incarceration in some other type of treatment setting versus in the state correctional system is not a claim that he ever asserted. What other implication to not following the process is there here under the law? What other result can there be? Well, the actual claim that he asserted is merely that the lack of a record caused him to lose out on certain programming and treatment within the state prison system. And that is, I believe, very close to the exact phrasing that he used every step of the way through this process until we got to the Third Circuit. But every step of the way you knew that he claimed that there was a 314B problem, right? I mean, you don't deny that? I don't deny that. So here's what I don't understand. If you concede that he articulated, maybe not as artfully as someone like yourself might, a 314B problem, there's no notice problem. You know, he went through the PCRA taking a consistent position. He comes now through 2254 taking the consistent position. What's the exhaustion problem? Well, I believe the exhaustion problem is that, you know, now it's a procedural one. It's that now we're standing here in front of a federal appeals court, whereas if these claims had been raised at an earlier stage, the state court would have had a chance to address them. You just said that it was brought before the PCRA. And if it's if it's brought in the three stages of PCRA process, that's the state. I understand the court's position with respect to this. I respectfully believe that the issue was unexhausted. However, it is it is clear to me what the what the panel I will I will move on from that argument. Would the court wish for me to address the aggravated assault claim? Well, let me ask you this. If if there is relief granted with regard to the 314 B, what happens to the aggravated assault? Forget about the substance of it. We don't need to talk about whether scratches. Right. Literally, what would happen to that? Well, I guess if the if the court's remedy were to vacate the judgment of sentence and remand for a new plea proceeding or further proceedings with the sentence being vacated, we would have the opportunity to create a better record at the time of the guilty plea. I think that that would basically render moot the issue with respect to the aggravated assault. I'm so sorry. When you say a better record, what do you mean specifically? A different record that more fully fleshes out the factual and legal. Yes, correct. To engage in a because certainly it's weak. We don't we don't know how these scratches occur. He could have rubbed against the wall and gotten this correct. And I also wish well before your honors to correct an inadvertent misrepresentation that was in my brief. I stated in the brief that the written criminal information states that the defendant threatened. I implied that he threatened the constable and then attacked him. And that led to the scratches in preparing for today's argument. I ascertained that the criminal information actually refers to him threatening the other individuals who are the subject of the intimidation of a witness or victim charge and then have this scuffle with the constable. So to the extent that I misinterpreted that and then relayed that misinterpretation to the court, I apologize for any confusion. The information, the language of the information also goes not simply to ask for a better record. But an attempt at assault. Correct. That's correct. Your honor. And that's and that's my my position here. That the the facts, the facts with respect to the aggravated assault charge. And in fact, some of the other documents relative to the right, which Mr. Velasquez has signed, did sign on to. Right. Refer back to the information. The universe of information that was available to plea council when plea council was advising Mr. Velasquez whether or not to enter a guilty plea was not limited merely to the charging documents. In this case, plea council would have had access to the discovery materials and other information with respect to what the Commonwealth could and could not prove in this case. Merely looking at the information and deciding whether or not there was a reasonable basis for advising a guilty plea. For that reason, I don't think that there's any kind of strickling claim with respect to that. As Ed put work into this, do we owe deference to anyone with respect to that aggravated assault claim? Does the court owe deference? Right. Or is it DeNova review? I believe that the court would owe deference because this is a claim. The aggravated assault claim is something that was put squarely in front of the state court and was was resolved in that fashion. So I believe that the I believe the state court would be owed some deference by a federal court. Anything. Thank you very much. Thank you, Your Honor. Anderson will have. I just like to address the two issues. One with regard to the aggravated assault charge that though though the chart and not the charge. Some of the Brady documents might have reference attempt when when the when Mr. Velasquez was colloquy on that issue. He was told that he either had to cause knowingly cause or threatened to cause. There was no discussion of attempt at the colloquy. We know what we said. That's it. That's in the record. But when you dig deeper and look at back at additional documentation, which he reviewed with counsel, which were and where he made acknowledgments, it included an acknowledgement that he had read the information as well. But as Mr. Velasquez argued, that is that if he had been told by his counsel that that in addition to the bodily injury, which is another element he he didn't meet and wasn't advised of counsel. But just with regard to the mental state, had he been told that he had to knowingly cause the injuries or attempt to cause the injuries, which also has an intent and men's very intent to it, that he wouldn't have pled guilty because he didn't mean to cause any injuries. He had some strong presumptions to overcome, though, if we get to that point. Don't you with regard to his finding on the with regard to not only the plea, but also to to effectiveness of counsel and in all of that possibilities that may have gone into why counsel would have advised Mr. Velasquez to plead, even if the question of scratches and bodily injury were problematic. With regard to the with regard to why he would have played it, even if he didn't meet the elements. Your Honor, what if there's the prospect that the jury is going to be charged if he goes to trial on attempt? That the jury is going to be charged, the jury is going to be charged, instructed on attempt. Yes, Your Honor. Yes. But and again, he might be found guilty of attempt. I'm not I'm not arguing that's that's my that what he has argued, though, is that if he had known that there was a men's right element to the guilty plea, he wouldn't have pleaded guilty because he didn't meet the men's right element. Bottom line here is the best course for you is this case is going back and are not having to reach the And if there's no other questions, thank you. Thank you to both of counsel. We'll take the case under advisement and.